We have 30 minutes set for argument, and if you want to make a rebuttal, you should stop while you save a little time for rebuttal. Thank you. Yes, I will reserve seven minutes. Okay. Thank you. Please proceed. Thank you, Your Honor, and may it please the Court. Plaintiff Ali Malik, who is here in the courtroom today, along with Sheikh Yassir Fazaga, who sadly was turned back at Chicago because of the wildfires, along with Plaintiff Yassir Abdel Rahim, sued the FBI because 17 years ago, this month, the FBI sent an informant, a man with a lengthy criminal history, into their mosques in Orange County to spy on them because of their religion. After the informant publicly converted to Islam before hundreds of congregants, the defendant FBI agents directed him explicitly to surveil people to get as much information as possible on Muslims and only Muslims in the community, imposing quotas on the number of contacts with Muslims and directing him to focus on people who appeared more devout. He complied, collecting extensive private information on people's relationships, travel plans, political and religious views, and information that's captured in his notes and hundreds of hours of audio and video. The government takes the position that plaintiffs' claims that they violated their most fundamental guarantees of religious freedom should be dismissed without hearing their merits. But they are wrong under either of two approaches. First of all, under General Dynamics, the Supreme Court clarified that the state secrets privilege is comprised of two distinct doctrines, neither of which allow dismissal here. So, I should say off the top that I'm somewhat skeptical of putting too much stock on General Dynamics given our own opinion in Jepson because it wasn't really addressing that question. It was just a sentence and it doesn't really deal with anything. But suppose we did. What does that mean? That means we have the trial and all the secrets come out or what does it mean? Or suppose the secrets, the alleged secrets? So, under General Dynamics, the court clarified that there are two distinct doctrines. I understand all that. I think you could assume that we've lifted this case for a long time. Let's start in the middle, not at the beginning. Yes, Your Honor. So, the court would be applying the Reynolds privilege as an evidentiary privilege where the secret evidence is excluded and the trial goes on without it. Meaning that the government can't put on a defense? Is that what it means? It means that the government would be limited to non-secret evidence. So, if the case is remanded under that approach, applying the General Dynamics view of Reynolds, plaintiffs would present their prima facie case as we've maintained all along. We have sufficient evidence based on the public information that's already been filed. Do you intend to get discovery? If the case goes forward, are you going to ask for discovery? We've taken the position that we don't need any discovery into the secret evidence. We would request limited discovery into only the matters on which we've already submitted evidence to confirm what the FBI agents told the informant to confirm that they, in fact, directed him to target people because of their religion, to get the notes that he provided to the agents that would confirm he followed those directions and the surveillance take, which would also serve the same effect, none of which should be a matter of state secrets since it... Are there surveillance tapes that are not available? The surveillance tapes that the informant... Some of them are, but some of them aren't. The government has said that most of them are, but again, well, this goes to the prematurity argument. Before plaintiffs have had the opportunity to put forward their evidence and seek summary judgment, it's not clear exactly what the government would want. So the government in that situation would be in a position where it controls the secret evidence, right? Plaintiffs do not have any of the secret evidence. We've disclaimed any need for it. So it is up to the government to decide what they believe they can introduce. They can introduce non-secret evidence in their defense, and under general dynamics, they can... But general dynamics does not address the defense problem, which is a difficult problem. The cases, the Supreme Court cases, tend to be thinking in terms of the plaintiff's case going forward, and they don't really address the problem of the defendant's case. That's correct. But general dynamics is most squarely inconsistent with the inextricably intertwined prong of Jeppesen and doesn't really engage on the valid defense prong. But even if this court believes that the... To answer fully the court's question, yes, under that approach, the government has to choose whether to introduce the evidence or not. And if the government chooses not to because of the secrecy or the privilege, that is, as Judge Hand wrote in Copland, perhaps a grievous hardship, but the result of any evidentiary privilege. Was Justice Hand talking about a defense? Justice Hand was... Judge Hand. Sorry, Judge Hand was, in that context, talking about... The plaintiff's. It was, I believe, a criminal case. Oh, okay. Yeah. But essentially the plaintiff's, the government... No, I believe it was a... It's just a really... The defense issue is a really hard issue when you haven't really... I mean, neither of you have really grappled with it very much or very seriously. Well, if this court believes that either the general dynamics does not displace Jeppesen or does not displace the valid defense approach of Jeppesen, it can adhere to its prior opinion and consistent with its prior opinion and in Rees-Field's case, the D.C. Circuit, whose approach it adopted, consider the secret evidence to determine whether it would provide defendants with a meritorious defense, not merely a plausible or tolerable... How would that work? I mean, I've been really thinking hard about how you would do that. It makes sense in the abstract, and the question is, how would you do it? Would it be like a... Well, just to give a posit. I mean, would it be like a summary judgment kind of proceeding where essentially the plaintiff would come forward with their evidence and then in camera, I guess, the district court would take the government's evidence and decide whether the government could prevail in summary judgment? Would that be what it was? Essentially, yes, Your Honor. I think exactly like that. And what if the government can't prevail on summary judgment because there's a conflict, a dispute of facts, then what happens next? Well, in that circumstance, if the court determines... So after the plaintiffs have presented their evidence that demonstrates a prima facie case of a constitutional violation, the government would come in and assert the state secret's privilege as to, not in general, but as to specific pieces of evidence that it believes it needs to defend against the claim as we have made it, which is not as the government has portrayed it in their papers so far. And once they do that, the court can review, consistent with state secret's doctrine, review to see if the evidence is in fact secret, and if it is, whether it is necessary to a defense and whether that defense, lastly, is meritorious. Okay. And then what about... What usually happens is, or what often happens is, the plaintiff says this happened and the defendant says that happened. As to specific things, like what was Montiel... How do you say his name, Montiel? Montay. Montay. What was he told, or what did he in fact do, or is his portrayal of various facts correct, and they say it's not correct. They say it's secret, but it's not correct. And then what happens? Those matters would be for the court to resolve, as with... So it wouldn't be like a summary judgment proceeding. The district court would resolve factual disputes. Under the valid defense doctrine, that's correct. The district court would decide whether the secret evidence, if it is indeed secret, provides defendants with a meritorious defense, whether it would require judgment for the defendants. And that is not a full and open court proceeding, but it is a much, much better outcome than having plaintiffs' important constitutional claims about whether their government targeted them based on their religion dismissed at the outset without ever having been heard. And I do want to focus... Your Honor flagged the potential evidence related to what Montay was told and what he was not told. I want to emphasize that plaintiff's complaint is... It is a complaint, and it's susceptible to two, I think, at least two factual theories that play differently that underscore how this dismissal is actually premature. The government has focused, and the district court focused, on the idea that plaintiffs were targeting... were claiming that the entire investigation was a dragnet, that the FBI, the agents all the way up, that the entire investigation focused on Muslims solely because of their religion. And the complaint is susceptible to such a reading that the primary evidence of that is that the FBI told the informant to target people because of their religion, and he did so. And it has other facts, anti-Muslim comments made by the FBI agent, the loosening of standards related to the use of religion in the FBI guidelines and FBI training. But there's also a much narrower theory that the district court did not address and the government has not engaged with, which is even if the investigation was properly predicated and targeted at specific individuals, if the government used the informant in a discriminatory fashion, if they told him, target people because of... they didn't want to tell him who the targets were, they didn't want to tell him what they were doing, so they told him, go target people because... who are Muslim. Spy on people, get their information because they are Muslim. And because of that, he acted on those instructions. That is still unconstitutionally discriminatory conduct. That is the teaching of the Supreme Court's religion cases that facial classification on the basis of religion triggers strict scrutiny and larceny of the lens and church of... It's the teaching of the affirmative action cases. Well, we wouldn't have to reach that, but it seems like a hard argument. I mean, if they were essentially... if they had reasons to be... and not religion to be investigating particular people and they were essentially using him as a poet and playing on his own predilections, I don't know that that's a religious discrimination. I respectfully disagree strongly. I mean, for the people in the community who were subjected to this surveillance, this man... I'll get to another question. We're not dealing with the people in the community. We're dealing with three plaintiffs. I know it's a putative class action, but at the moment we're dealing with three plaintiffs. Right? So how do those pieces fit together conceptually, even substantively and also as it pertains to this state secrets problem? Do we have to look at state secrets beyond what pertains to these three people? And as to your theory, does it go beyond what happened to these three people? Well, of course, Your Honor, you're correct. At this stage, what's before the court is these three people. And so the government, we understand, to be asserting the privilege as to these three people. And look, it's our position, of course, that even applying Jefferson is premature at this stage because plaintiffs have not had the chance to submit evidence showing what the informant was told by the FBI, what he actually did. And once we have that opportunity, that will clarify exactly what evidence the government might need in response. And I do want to be clear, what the government told the FBI agent, it's our position that cannot be a state secret. Sorry, what the FBI agents told the informant cannot be a state secret. The informant is not an FBI agent. He does not have security clearances. He was hired on the basis of the fact that he had already been working as a narcotics informant because of his connections in prison based on a lengthy criminal history. The government cannot take the position, disclose information in that context to somebody like this in Orange County and then turn around with very little expectation that that is a reliable, that that person will preserve those secrets  that should justify throwing constitutional claims out of court. And I'll also say, the informant filed declarations in this case, four declarations, lengthy declarations, describing what he was told, and the government has taken no action in response. So certainly, what they told the informant does not seem to be what they are saying. The evidence that would come in on the plaintiff's side would be him testifying to what's in his declaration. Sorry, Your Honor? Be him testifying to what's in his declarations. That's correct, and the communities, other people in the community, even if it's just with these three plaintiffs, people testifying that the way that he behaved in the community was consistent with those instructions, that he moved through the community in a way that seemed like he had no targets, that he was collecting information on people indiscriminately. And then, of course, that we would seek limited discovery to the extent that the FBI was controverting his account of what the agents told him. We would seek discovery on simply what the agents told him, but not on the underlying targets or purpose of the investigation. I should also say that one of the other reasons that the dismissal at this stage would be premature, particularly today, the investigation in this case, the underlying fact, happened 17 years ago. Four previous presidents ago, at a time when iPhones had not been released. The security threats that the country faced, the way that we investigate those security threats has fundamentally changed since then. The state secrets was... What did you say? What had not been released? I said iPhones. Oh, iPhones. Okay. Just a point about the way that information is communicated in our society, the way that investigations are conducted, has fundamentally changed in the 17 years since the facts at issue. And it's far from clear that the matters that they asserted, the government asserted were secret in 2011, for attorney generals ago, are still secret today. And the government has made a representation in their briefs that they've reviewed this and that they still are, that they should not benefit from that without going through the required procedures under case law of having the agency heads review and affirm that they are still secret. Counsel, the only question I have for appellants is to ask you to answer, if you can, as simply as possible, why it is that the defendants could validly defend this case without access to the confidential documents. Well, Your Honor, under the narrower theory that I've sketched, that assume that there are predicated targets, and what we are challenging is their use of an informant with directions to spy on people because of their religion, the only defense that they would have to that, if we have shown that there is a facial classification, as I was saying under the affirmative action cases, it's clear that where there's a facial classification, it is that in a complicated decision like the admissions context or a decision about who to investigate and how, it is that facial classification that is subject to strict scrutiny looking at it on its own. And so they would have to, if we establish a facial classification, they would have to either rebut that it was a facial classification or argue that it was narrowly tailored. I think that would be very difficult for them to do under any circumstance. And if following this court's valid defense approach, they would assert the state secret's privilege with specific pieces of evidence that they say are necessary for them to show that the use of a discriminatory informant is narrowly tailored to their purpose. And this court would have to decide that those pieces of evidence, which may be different from the evidence, I presume would be different from the evidence that they would submit on a broader theory, are both secret and that they are necessary and would provide a valid narrow tailoring defense. And I do not think, respectfully, that the use of discriminatory investigative techniques, even if there is an underlying predicated investigation, is not constitutional. If there are targets for a particular race or religion that they are concerned that somebody is coming into a country, the government still could not set up a separate line at the airport for people of a specific race or religion in order to catch those predicated people. Why couldn't they hire this person to infiltrate? I mean, if they had specific targets in mind for other reasons, but they want to gather information on those people, say, in their milieu. And so I'm having a little trouble with your theory because this person is... So they have a person who is going to investigate. They're going to set up to look into that group. I mean, that doesn't mean... I mean, if they were looking at only that group and they didn't have anybody looking at anybody else, that would be a different problem. But if they have... The fact that they have an informant directed at a certain subgroup and they tell him to focus on that subgroup, why is that a problem? Because that is... They have to have each informant go to different subgroups. They have to investigate different religious denominations. They can't just investigate one religious denomination. No, they would have to have... They would have to instruct their informant to look for... to report information not based on the subject's religion. Because what they told this informant... So that's what you're saying. So you're saying the problem is that he was... It's that he was investigating based on their religion, meaning that he incorporated their religious ideas, which he says he did. But is that what you're saying? Yes, and that the FBI told him, we're interested in getting as much information on the Muslim community as possible. We want to set quotas for the number of Muslims you target. We're interested in people who are more devout, targeting specific religious practices. If the police are looking for particular suspects of a particular race, they can't stop every person of that race that comes through, regardless of... in an entire community. The problem is that we only have three plaintiffs. But we do only have three plaintiffs, but any of the people of that race who were stopped at a roadblock could bring a challenge saying, I was stopped because of facial classification on the basis of race, just as here... Yeah, but they haven't. In other words, maybe some of the people who were not... some of the completely different people. But if there were a defense as to these particular people, if there were... These plaintiffs have brought this claim, arguing that they were targeted for surveillance... They were targeted for surveillance. ...on the basis of their religion. And I do want to make clear, even if they were predicated, they were legitimate targets, the fact that the FBI sent this informant in to target people because of their religion worked an extraordinary harm on this community. These plaintiffs understood that their government targeted them for surveillance on the basis of their religion. They sent an informant who approached them because of their religion. They invited them into their homes and offices. He took audio and video. He tried to probe their political and religious views, and he did it because of their religion and their religious practices. And even if the FBI, in the back of their minds, had targets in their mind, that's still a harm. And there is still information in the FBI's files that is gathered on these plaintiffs because of their religion. So... Very interesting. Thank you. I'll reserve the rest of my time for rebuttal if there are no further questions. Thank you, counsel. Thank you. So we're on the appellee. I think there's 30 minutes. I'll allow it to your side, I think. So, Your Honor, good afternoon. Joseph Buso on behalf of the federal government appellees. Katherine Carroll will be taking 10 of our 30 minutes on a separate clock. She's representing the agents who are sued in their personal capacities. So I think from this morning's discussion so far, the court has the issue of general dynamics and its non-applicability here. Well in hand, Jeppesen controls the key legal issues that plaintiffs have advanced on remand briefing from the Supreme Court. Where the government has properly invoked the state secret's privilege to protect information whose release would significantly harm the national security, then when those secrets are so central to the progression of a case, whether for an affirmative case or for an offense or because the issues are just so closely intertwined with non-privileged information, then dismissal is proper to protect state secrets. That's the holding of this court on Bonk and Jeppesen and it remains applicable here. Applying that standard dismissal of the religious discrimination claims was proper. What we have said publicly about Operation Flex is that it was a targeted investigation focused on fewer than 25 individuals to determine whether particular individuals were involved in the recruitment and training of individuals in the United States or overseas for possible terrorist activity. That's from page 268 of the excerpt of the record, Mr. Giuliano's declaration. Now, beyond that, we have publicly acknowledged that Mr. Monte served as a consensual informant and we have disclosed some recordings regarding his public conversations in an unrelated criminal proceeding. But that is the extent of our official disclosures. Everything else in this case relevant to plaintiff's allegations of religious discrimination, what the FBI did and why, crucially, cannot be litigated because all of that information is properly privileged. It has been completely removed from this case. Was there any information that was revealed in the criminal proceeding with that privilege? We have not claimed privilege. You haven't claimed it, but it seems like the same information. Oh, I would disagree, Your Honor. The tapes that were officially disclosed in the criminal prosecution involved some conversations that Mr. Monte had in public with some other people under particular circumstances. The fact that he may have had a conversation with someone in public, of course, would not disclose the reasons the government was investigating anyone or the targets of those investigations or who else might have been under investigation or why. Specifically, the information is privileged or not privileged, not depending on the argument that's being made with regards to it. The information either is information that shouldn't come out to the public or it's not, and whether it turns on motive or anything else doesn't really matter. Whether the issue is about motive or anything else. It's the information. Oh, we agree that privilege applies to information, and here we've invoked the privilege over the FBI's reasons and the methods by which they investigated fewer than 25 individuals based on... I have another question. I gather that as to Montel himself, how do you think his name is said? I don't know. I believe it's Mr. Montel. That's what I took from Mr. Bibering's presentation. That's Montel himself. He has the full declarations he's submitted in the complaint. Now, you're not claiming privilege about that. We have neither confirmed nor denied the truth of anything he has said in those declarations. We've only invoked the privilege. You're not contending that he can't say it. We have not contended that here, Your Honor, no. We have only invoked the privilege over the FBI's actual reasons, information in the FBI's possession regarding who they were investigating, why, the methods of that investigation, the predicates for it, the information discovered in those investigations. All of that information is properly privileged and, crucially, is completely removed from this case. That's the language of Jeppesen. Reynolds reinforces that conclusion. So there is no way for the case to proceed to litigation on the merits because the government would be completely deprived of an ability to poke holes in their affirmative case or... Let's talk about the ballot defense situation. You contest in your briefs, first of all, whether our prior opinion is binding on that issue, and, second of all, I don't know whether you contest that. I don't remember whether the merits of that. But why doesn't that, for the reasons stated in the In Rio Sil case, which I thought was very thoughtful and well put together, not make sense? I mean, why should it be? On the one hand, the government should not be deprived of its defense. On the other hand, the plaintiffs should not be deprived of their case unless one really, really, really has to do that, and all the case law says that. So why isn't there a sensible solution, Tom? Well, this court in Al-Haramain explained that there is no halfway solution, that the state secret's privilege involves an equity of the highest order, the national security, and that it necessarily must prevail, even if it means the harsh medicine. You have already submitted in camera a very lengthy declaration and accompanying material, and it tells your story. So whatever danger there is from submitting it in camera, you've essentially done it. So now if you back it up in camera with actual evidence, what is the problem? So I'm glad to have the opportunity to address that. I think this is crucial. Every time there's classified information that we have submitted as parte and in camera, there is additional risk to the national security. So in Reynolds, for example, the Supreme Court explains that very frequently... So in Reynolds, the Supreme Court explained that frequently the submission of the information in camera... Okay. Thank you.  Okay, sorry for the delay, and please proceed. So picking up where we left off, discussing the valid defense issue. Oh, sorry. Picking up where we left off on the valid defense issue, Your Honor. So having a secret trial using secret evidence is grossly— Well, there's a possibility, I suppose. I mean, the question is, you know, how would this play out as we were discussing before? One possibility is that it's essentially tantamount to a summary judgment-type proceeding in which the plaintiff presents their case on paper, and the government then does as well, but this time with actual evidence, as opposed to what's essentially a declaration by a single person. How does that differ from what's already happened? So it's different in a very crucial respect. Reynolds and this court's opinion in Jeppesen, here I'm referencing footnote 10, make clear that each level of additional contact with a classified record regarding state secrets carries additional risk. So, for example, in Jeppesen, one question arose, well, once we've concluded we'd rather not use the Totten method of approving dismissal, should we remand to the district court for the district court to consider dismissal under Reynolds in the first instance? And the court explained, well, that approach carries much risk because... Well, I mean, in this case, to be realistic, we have had how many years of proceedings with how many different judges who have looked at the classified material, including nine Supreme Court justices, three of us, the district court, and also, I mean, this is another question, but this is all 20-year-old information or more than that. It seems, obviously, this is all a balance between arguably or possibly depriving the plaintiffs of their constitutional right to a hearing, to litigate, and also to whatever constitutional rights they're claiming, and letting the government defend itself. I mean, the plaintiff's position, which is essentially the government can't defend itself, doesn't seem like a very good proposition, but why isn't making every effort to have the government defend itself with as many different protections as possible, but not having the lawsuit go away? I mean, the underlying problem here, of course, is that there is an inherent conflict of interest by the government because you're both a defendant and a protector of the interests, and having no eyes on that is very troublesome. And the notion that things are going to leak out that haven't leaked out in the last 20 years is not very believable. Respectfully, Your Honor, I think I have to disagree with that. The evidentiary use of state secrets is over and above the examination of state secrets. It's over and above what, I'm sorry? The examination of state secrets that a court would engage in to uphold the privilege. That is one use of state secrets, one that even shouldn't happen unless it's absolutely necessary to examine the state secrets in camera, even to uphold the privilege. But to use state secrets in an in-camera proceeding in an evidentiary way just magnifies the risks in the way that Jeppesen explains at footnote 10. It's also grossly unfair. It's not just the government here. We also have separately represented agents sued in their personal capacities who would have no ability to properly defend themselves in such a proceeding. And finally, this is not a sui generis situation. What if you do it, this situation is unfair? I think because of the gross sense of unfairness, dismissal is required. So general dynamics actually teaches that. Once we invoked the privilege to deprive the contractors there of their affirmative defense, the court concluded it would be grossly unfair to allow the government to nonetheless proceed with its main claims for contract breach. That gross unfairness led the court to conclude we have to leave the parties where they started because otherwise it would be very unfair to the contractors. But there were no limits on the fact that they were contracting parties who essentially had absorbed this risk. They were very explicit. It's a very interesting opinion. Sure, but this is not the only area in which this issue arises in the law. So for example, in the Egan context, we cited the Brazil case in our brief to this court. A question arises in a Title VII action alleging unlawful racial discrimination in the revocation of a security clearance. Can that Title VII case proceed to adjudication on the merits? And the clear answer is no. Because a court cannot examine the government's reasons for revoking a security clearance, that case simply cannot proceed. The same principles apply here. And it just goes – I guess I would ask the court to consider what it would look like to engage in a real evidentiary analysis of state secrets and then how hard it would be for this court, you know, considering all of those state secrets in camera and then considering all of whatever public information plaintiffs are able to put on on the public record to try to keep straight the origins of various pieces of information in your head while you are discussing the case with other members of the panel, while you are trying to write something. What does the FISA court do all the time? Your Honor, so with respect to the FISA court, my understanding is that there are no private parties there making any arguments. All you have is – That's a private party problem. But the FISA court hears presumably state secrets information all the time. And to make a probable cause – And we've all lived through it. I'm sorry? I'm sorry. So one, it's just necessary to have that hearing in order to engage in the important FISA surveillance. Secondly, they're making a probable cause determination, which is significantly different than trying to adjudicate someone's claims on the merits. And it just plays with fire to try to keep straight, you know, do I know this one piece of information because of an in-camera submission or do I know it from something in the public record? How do I keep those two things separate so that there is no spilling of any state secret in a proceeding? That is the trouble that the state secret's privilege solves because it completely removes the information from the proceeding. That's one of the core holdings of the Jeppesen case. And we do not think there is any wiggle room – The other possibility is, yes, it's completely removed. And then as the plaintiff's saying, the case goes on. And if you don't have a defense, it's your problem. That doesn't attract me. But that's a possibility. It would preserve the secrets. I think it's a possibility foreclosed by binding precedent. By what, I'm sorry? By binding precedent. Such as? So the Tenet case, Your Honor, I think makes clear that, look, the government cannot be put to the choice, protect national security, or confess judgment. That's the kind of graymail concern that I think the final paragraph in the Tenet case was discussing. I know of no case from this court or the Supreme Court or any court of appeals saying the government can be put to the choice, confess judgment, accept an injunction, try to calculate damages for separately represented at personal capacity defendants with somehow without reference to state secrets, or protect the national security. I don't know of any case that stands for that proposition. It's completely antithetical to the core purpose of the doctrine. Totten says that it's a general principle that any case, the trial of which, would necessitate or risk the disclosure. We never claimed that this was that category of case, right? I'm sorry, I did not hear the last part. We never claimed that this was a Totten Tenet case, right? So we did not seek... I mean, this is a case where the subject matter itself precludes the litigation. I think that's right, but I'd like to explain... I've seemed really to limit those cases to the contractual context also and to regard it all as a matter of contract law. So one, I don't think that's a quite accurate description of what general dynamics does. General dynamics does not say only where the underlying state secret is a contract can a case be dismissed. One, there'd be no principled basis on which to make such a ruling. Of course, clandestine contracts are important state secrets, but, of course, so are many other things, and there's no reason to conclude that one set of cases could be dismissed, but others would not. Put simply, general dynamics does not say only in a contract case. Then, to take a step back, in Totten, the Supreme Court mixes contract principles with constitutional principles, recognizing the president's necessity of a secret service and maintaining the secrecy of that service for the president to carry out his constitutional responsibilities. We see the same general principles articulated in footnote 26 of Reynolds. We see Weinberger... Sorry, are you now claiming that this is that variety of case, although it's never been the case before? No, so if I could just explain our understanding of what it means to have a pure Totten case. So we think Jeppesen explains this really well. It explains that a pure Totten case is a case where the very subject matter is so obviously a state secret that the government doesn't even have to file the declaration invoking the privilege. We know from the Tenet case, for example, that in a Totten case you can dismiss on the pleadings even without invoking the privilege and filing a declaration. The key distinction between that and a Reynolds case is, of course, in a Reynolds case we have to invoke the privilege by filing the requisite declaration. And then once we have done that, information is removed, and it may be that so much information is removed that dismissal is required. That's the kind of case we have here. We're out of your time, I think. Are you running the 30 minutes or the 20 minutes? Oh, I see. Okay, go ahead. I'm sorry, go ahead. No, except for the clocks. So, well, go ahead. No, so I think I just come to the end of the key point there, which is just that the privilege removes the information from the case. We think it's extraordinarily dangerous and unfair to have a secret trial using secret evidence. And then finally, we are unaware of any principle that would put the government to the untenable choice of confessing judgment or protecting the national security. Other than Jepson, I think Jepson was a case where there was no specific evidence that was at stake. Is that right? Well, we filed a declaration in Jepson invoking the privilege over specific categories of information. I mean, there was not, in most of the cases, or like Reynolds, or I think your Title VII case or others in which there's a particular document as to which the state's secret privilege has been claimed. I think Jepson was not such a case, although I'm not positive. Is that right? In Jepson, it was sort of... Categories of information. Right, categories, like this case. But other than Jepson, what other cases are there like that? Involving categories of information, Zubeda? We're not dealing with... The case has not proceeded to any discovery or evidentiary stage at all, and we don't... I mean, one of the problems here is we don't know what we're talking about. We don't have the actual... a sense of what this evidence is that we're talking about. We know in summary what you're saying it is, but we don't know what... There's no document, there's no deposition, there's no declaration, there's no actual something. So, Your Honor, I can't make representations in this open courtroom about the context of our ex parte filing. I apologize. But Jepson made clear that even on the pleadings, it would be unnecessary and potentially dangerous, quote-unquote, that's the language from Jepson, to proceed to the summary judgment stage. That's because, you know, filing an answer is a fraught undertaking in a case like this. Any discovery motions, depositions, litigating all of that plays with fire. That's the language of Jepson. And when the state secrets are so clearly at the heart of the central issues, so here the government's reasons for investigating whoever they investigated, when that's the heart of the claim and those are the state secrets, then litigation simply cannot proceed. That is the only way to properly protect the state secrets, which the Supreme Court has explained is, you know, the public interest of the highest order necessarily has to prevail over any private claims. And then finally, I would just want to highlight as I'm running out of time, that the district court dismissed for a combination of two reasons. One was about the deprivation of the defense, but the other one was about how the state secrets were so central to everyone's claims that any litigation would necessarily endanger disclosure of those secrets. If you were to focus on that last stage... Just to play that out for a minute. If you had a procedure for determining a valid defense, then there would either be a valid defense or there wouldn't be a valid defense. Or maybe there would be, if you did a summary judgment-like procedure, there would be a determination that there was a dispute of facts. If the third thing happened, then yes, your observation would be right. But as to the first two, I don't see the overlap. It seems to me that there is a mutually exclusive... You don't separately look at this problem of whether there might be intertwined... Secured and not secured evidence because you would be doing it under a proceeding that's supposed to protect both. I understand you don't think it does, but if you did that, I don't think you'd get to the next question. Except I heard my friend on the other side this morning say he wants to take depositions of the agents regarding things that we say are state secrets. Those depositions are going to be inevitably frothed. Then you can impose state secrets defense to that for sure. Not do it. We can't do that. We have a state secrets problem. The Supreme Court highlighted in general dynamics how fraught that is. The plaintiffs may be consequently badly hampered, but not as badly hampered as getting the case thrown out. That's our problem here. How much do we hamper both sides because of this problem or do we just close the courthouse door altogether and say we're not going to file a letter? That's the problem. It's a dismissal without prejudice, which I understand is a small thing, but it is a thing. As every court of appeals that has had to face this question has said, dismissal to protect state secrets, as hard medicine as that can be, has to prevail. I pointed out it's relatively rare that's ever happened at this stage. As far as I know, there's Jefferson and Jefferson. I apologize. I do not have a comprehensive sense as I stand here of all of the other court of appeals cases in which might have been brought at a motion to dismiss. There aren't a lot. Mainly, at least they've gotten to the stage of being about something. For example, in the Egan cases, in the Brazil case that I cited to this panel in our brief, the question of whether you can adjudicate a Title VII racial discrimination case, where the case turns on the government's reasons for revoking. I thought the problem there, again, was about a document. I'm not sure about this, but I think it was about a document that would have shown the reasons, and they said, we can't get that document. No, Your Honor, I believe that to be wrong. I believe it is a matter of justiciability. Can the court consider the question of the government's actual reasons? But now you're talking justiciability. You're talking patent, and you've never argued that. With respect, so the Jefferson case explains that once we've invoked the Reynolds privilege, there's a continuum of outcomes, and outside of that continuum, where dismissal is required to protect the state secrets, then the Totten sort of line of cases and the Reynolds line of cases converges. So we have always relied on the Totten style of thinking because we are at that point in the continuum of having invoked the privilege in a case in which the reasons why the FBI did what it did are properly protected state secrets that cannot be endangered even a little bit. Any evidentiary consideration of those secrets would so threaten the national security that dismissal is required now. Jefferson supports that conclusion, and we would ask for you to affirm unless there are further questions. Thank you for your argument, and you are four minutes past time, but it's a fascinating and difficult case, and you've got a lot of questions to answer, so we appreciate your efforts on that. Thank you very much. And now Ms. Carroll. Ms. Carroll. Ms. Carroll, as you're getting set, I'll just remind you to be at 10 minutes set for your argument. I guess I've already tipped my hand that I kind of softly on time, so if you're really in a jam, I'll give you another minute or two. But we do need to move this along. Great. Thank you, Your Honor, and may it please the court. I'm Catherine Carroll. I represent the individual capacity defendants. Given that, as Your Honor observed, there has already been a lot of discussion on the state secrets points this afternoon, I would just like to add a couple of points on that issue that I think are particularly salient for the individual defendants.  I'd also like to make sure to save a couple of minutes to talk about the alternative ground for affirmance, which is that under the Supreme Court's recent decisions, it's now beyond debate that no Bivens remedy is available in this case. And so to the extent the court has any uncertainty at all about the correctness at this stage of the state secrets dismissal, the claims against the individual defendants nonetheless should be... I thought there was also a FISA case against the individuals. I'm sorry? I thought there was also a FISA case against the individuals. There is a remaining FISA claim as to two of the five individual defendants. So defendants Allen and Armstrong remain defendants in a sort of significantly narrowed version of the Fourth Amendment and FISA claims, which are the Fourth Amendment and FISA claims being, as this court put it, identical. With respect to the religious discrimination claims, a ruling on the Bivens issue would dispose of all remaining claims as to the other three defendants. And I think it's... And also, therefore, dispose of any concerns about the state secrets. It would, and I think that's... As to that. That's correct, and I think that's an important... As to the FISA Fourth Amendment, there is no state secrets issue in the case right now. That is correct at this stage, given the court's prior decision. I do think it's fairly straightforward also to find no Bivens remedy on the Fourth Amendment piece, given the identical FISA claim, which provides an alternative statutory remedy. The benefit, I think, of going ahead and addressing the Bivens issue is that I think the colloquy this afternoon has brought out a number of questions that are especially problematic from the perspective of the individual defendants. And just to highlight a couple of those. The first point is that I think Mr. Biebring has sort of drawn out this idea, and Judge Berzon, a lot of your questions went to this as well, that there's this sense of some rough justice to the idea that if the government, you know, is going to defend itself, it has the choice to make of whether it rests on the privilege or decides to submit certain evidence it needs for its defense. We don't have that choice. My clients need the privileged information to defend themselves. There is no conceivable defense they could offer in this case that wouldn't require resort to privileged information about the targets and subjects of the investigation, the reasons for the investigation, the methods and narrow tailoring of the investigation. There's no conceivable way they can answer those charges without relying on the privileged information. But the government's decision to assert the privilege over which my clients have no control takes that evidence away. And moreover, we further have no control over what's in the privileged record that the government does choose to put in. So even if there were going to be kind of some sort of secret proceeding, whether it's a summary judgment proceeding or an ultimate adjudication of liability, the individual defendants are at the mercy of the government to decide what evidence will or won't be available. And if the government decides not to put in particular evidence that the individual defendants need to defend themselves, there's nothing that can be done about that for the individuals. Now, Judge Berzan, I think your questions highlighted what Mr. Abusa acknowledged and the courts of appeals have acknowledged that there's some harshness to this. When you talk about closing the courthouse doors as a result of the state secrets privilege to claims that one would think a plaintiff should have their day in court. It's a question of trying to avoid it. Not to say it can't happen, but to say that we should think hard about whether there's a way to avoid it. That's a different point. There may not be, but that's the question. And I take that point, and I think that's another reason why the Bivens issue plays a really important role here. Because we're not talking about closing the door on constitutional claims against an ongoing violation. We're talking about a damages remedy for which the courthouse door should never have been open in the first place. It's now beyond debate. The plaintiffs have had a chance to brief this in the supplemental briefing. The decisions in Egbert, Hernandez, and Abbasi clearly foreclose any Bivens remedy. And so to the idea that applying the state secrets privilege is somehow unfairly depriving the plaintiffs of an opportunity to litigate claims against the individual defendants, I think that notion just doesn't have any privilege here. Could you be a little more specific about the Bivens issue in that I understand that Egbert and the First Amendment, right, and this is the First Amendment. But what about the Fourth Amendment claims? So Egbert also involved a Fourth Amendment claim and held that it could not be, no Bivens action was cognizable there. And I think that one of the main reasons that Egbert relied on that applies in spades here is the fact that that case, like Abbasi and like Hernandez and like this case, implicated sensitive national security concerns. And what the Supreme Court said in Egbert is that a Bivens action, quote, may not lie, end quote, when national security is implicated, as it undoubtedly is here. Was it national security or was it foreign relations? So in Egbert it was both. In support of that conclusion, Egbert also cited Abbasi, which was a challenge, as the Supreme Court put it, a challenge to a significant element of the government's post-9-11 response, which is exactly what this case is about. The plaintiffs have not identified any conceivable reason to think that Egbert, Hernandez, and Abbasi are not completely dispositive. These Bivens claims are dead on the vine at this point, and reinstating them would serve no useful purpose but to delay their inevitable dismissal for no good reason. The last time we were here before this panel, the panel cited a couple of reasons for stopping short of that ultimate decision, because even at that time it was very unclear whether any Bivens remedy would be available. Neither of the reasons the court cited remain true anymore today. One of the reasons was the parties hadn't yet had a chance to brief the effects of the Supreme Court's decisions. There's now been a full round of briefing. The other reason was that the court found it unclear whether the plaintiffs would even continue to press the claims against the individual defendants, given how considerably the court had narrowed them. And it's now... Well, on the Fourth Amendment FISA claims, which may still be true. I don't know why they would continue them. Well, with respect to the Fourth Amendment Bivens claim, I think the availability of the FISA claim, which is identical in its scope and remedy, forecloses a Bivens remedy there. The Supreme Court has also reiterated very clearly that when you have an alternative remedy, it's not appropriate for the court to construct a Bivens claim. But I think, again, the availability of the Bivens issue, I think, not only as an alternative ground for affirmance, if the court was otherwise inclined to send the case back on any ground, but I think it also helps to inform, again, how to think about the state secrets issues. Because when you think about the role of the individual defendants, for whom plaintiffs don't really have a right to be in court proceeding in the first place, so that balancing of interests, the equities that we're talking about, is quite different for the individual defendants. And in thinking about, for instance, the valid defense standard, it can't be the case that if the individual defendants have a defense that would be legally meritorious if it were completely proved up, and if the privileged record provides at least some factual support for that defense, at least enough to survive a motion for summary judgment, it can't be the case, then, that plaintiffs just get to recover. I can't think of any litigation scenario where that would be the outcome. Among other things, my clients have Seventh Amendment jury trial rights. We can't have a secret proceeding to adjudicate disputed issues of fact that are not amenable to resolution on summary judgment. And again, because my clients don't have any control over what's in the privileged record, it would be unfair to hold the individual defendants to a standard of ultimate proven merit that would leave them on the hook for damages in their personal capacity when they cannot put in the evidence they need to defend themselves. I want to make sure I understand your argument. Are you saying that regardless of how we treat the claims against the government defendant, that the individual defendants, the claims against them should all be dismissed? That's exactly correct. Not all, not the FISA claim. Not the FISA claim, that's true. The FISA claim is not... Our alternative ground for affirmance concerns the Bivens claims, which are, as I said, clearly foreclosed by the Supreme Court's recent decisions. It's not costless to allow those claims to continue to linger as long as they have been. And given that there's, I think, no reason to think those claims at this point are anything but futile, no sensible purpose would be served by allowing them to go forward at this point, unless the court has further questions. Thank you, counsel. Thank you, Your Honor. Can I just do one thing? At some point, can you get to the Bivens issue? Yes, Your Honor. In the beginning or end, or whenever you want. I wanted to first begin by returning to Judge Gould's question about how to defend this case, how the government could defend this case  that the Bivens case, the Bivens case is a case that on remand, the court, consistent with the approach that the D.C. Circuit took in Reeve's sealed case, could direct the district court to address, to allow us to present the evidence that we have, allow the government to assert state secrets privilege over specific pieces of evidence clarified by the theory that we actually put forward, require the district court to do what it did not and actually decide not just whether the evidence, that evidence, which I expect would be a narrower set of evidence, is secret and whether it provides a valid defense. And that's the law of the case. The problem, the district court did say that he found there was a valid defense. He applied... He says also that he read everything that was currently in the classified record. Your Honor, the district court used the words valid defense, but he cited, the court cited El-Masri, which does not require that that defense be meritorious, merely that it is colorable, which is not what this court directed in its remand instructions, those... He said something like, you know, if in fact this turned out to be true, then it would be OK, but not that it was true. Exactly, that it would require judgment that the evidence would require judgment for the defendant. That is what this court and the D.C. Circuit in Inrees Hill's case indicated. I also wanted to touch briefly on the government's point that every time there's an ex parte proceeding, there's a risk. I think that is a truism but a gross exaggeration. Courts handle secret evidence all the time. There is a facility in the Orange County Courthouse to handle secret evidence in SEPA cases and another submission of more of a narrower sort of specific evidence is a marginal risk that is more than outweighed by allowing plaintiffs their day in court. I also wanted to address the equity concerns, the equities for the individual defendants and point out that the unfairness here to putting individual defendants potentially on the hook for damages is also in the government's hands. The government could simply choose to, recognizing that the issues are created by their assertion of state secrets, could indemnify the individual plaintiffs. And they will. Not only could they, but they will. But that's something we're not supposed to pay any attention to. But in terms of the equities, ignoring that for the Bivens fiction that they are on the hook and then using that justification to dismiss plaintiff's claim is unfair. Why isn't she right that given where the Supreme Court has been telling us that, in Egbert particularly, that there's really no point in going forward with them at this point? Your Honor, Egbert is not directly on point. It doesn't foreclose. Well, it's on point about the First Amendment. It says the First Amendment. It does say the First Amendment, but it's a speech retaliation claim. It's not a religious discrimination. That applying the Court's standards, which I find strange standards, that there would not be the finding that this is a new area and so on. It is not beyond debate. When this Court issued its remand. It's not beyond debate? You don't think it's beyond debate as to what the current Supreme Court would do with this? I don't. It's not foreclosed. Given Egbert. The Supreme Court had already decided Abbasi when this Court remanded previously. But Abbasi wasn't a First Amendment case. Egbert is, and Egbert is also a case about the Fourth Amendment and national security interests. We would distinguish those cases on grounds that it's First Amendment. The Supreme Court has been clear that there's a distinction drawn between different areas. So this is religious discrimination, not retaliation for First Amendment speech activity. That is a case arising in the context of border security, whereas this happened in Orange County, unlike Abbasi, which was the Court emphasized a challenge at the highest level of national security policy. This is about the decisions at our narrowest theory. This is about the actions of two FBI handlers in a single investigation in Orange County. We would raise all of those to distinguish it. And we don't respectfully disagree that it's beyond debate. I did want also to address briefly the government's argument that Brazil is somehow relevant here. Brazil was a Title VII action in the context of a Navy contractor who was denied a security clearance. What is the name of this case that you're talking about? Brazil. It's a Ninth Circuit case that the government, like the country, B-R-A-Z-I-L, where the plaintiff alleged retaliatory or discriminatory denial of a security clearance. That is a very different context. Here, the plaintiffs have not sought employment, and like Egan, that is about the Supreme Court's decision that the government's decision to grant security clearances is committed to the executive and beyond review. It's not a state secret issue. I also briefly wanted to address the government's argument that general dynamics presents no principled basis to distinguish between a Totten dismissal in the contracting context and otherwise. And that's clearly contrary to the language of general dynamics. Justice Scalia is very clear that the rationale for Totten is rooted in contract. It's rooted in the court's equitable powers to fashion remedies in contracting cases. It's rooted in the assumption of risk that contracting parties take on when they approach national security context. And of course, plaintiffs did not assume any of those risks by going and worshiping and practicing their religion. Regarding Judge Berzon's questions about other cases that may have followed Jefferson, I don't have any, but I do want to point out a counterexample to the dismissal at the outset, which is the Henry Field case, where the court of appeals there found that the district court should not have dismissed at the outset and instead remanded with instructions that the district court needed to consider the evidence that the government asserted privilege over and consider specifically whether it provided the government a valid defense in the sense of a meritorious defense that would require a judgment for the government, not simply a colorable defense. And I see my time is up. And if there are no further questions. Well, I have nothing to say. Thank you. Thank all of you. I also I want to say that COVID, I didn't say that the reason that was called off the first show was because I had COVID. I guess you didn't figure that out. So you finally made it. Well, we're glad everybody's here. Thank you all for the excellent arguments on all sides of the case. It's a real pleasure as an appellate judge to hear a case argued so well, both on the appellant and the appellate side. So thank you. The panel will now adjourn for conference. And then after our conference, we will have a short ex parte hearing. And I'm sorry, the appellant won't be in that one. But thank you. And with that, the court's adjourned.
judges: GOULD, BERZON, Steeh